Hillsborough-Northern Judicial District
Nos. 94-096
    94-265
Merrimack
No. 95-224

JAMES WELLINGTON

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS

October 31, 1995

*Albert E. Scherr,* of Concord, by brief and orally, for the plaintiff.

*Jeffrey R. Howard,* attorney general (*John C. Kissinger, Jr.,* assistant attorney general, on the brief and orally), for the defendant.

BROCK, C.J. In these consolidated cases, the plaintiff, James Wellington, appeals the Superior Court (*Murphy,* J., *Goode,* J., and *Groff,* J.) denial of three petitions for writ of habeas corpus. These petitions essentially allege that the plaintiff is entitled to relief because he has been denied parole for failing to complete the sexual offender program in prison, and that he was rendered ineffective assistance of counsel prior to entering his guilty plea and at the time he received his sentence. We affirm.

In 1987, the plaintiff pleaded guilty to one count of aggravated felonious sexual assault. He maintained his innocence to the crime charged and entered his plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). Although the plaintiff originally was given a suspended sentence of five to fifteen years, along with a period of probation, he is now imprisoned because of a probation violation.

The plaintiff was denied parole after he had served his minimum sentence. At that time, the New Hampshire Adult Parole Board (parole board) informed him that he would not be eligible for another parole hearing until he completed the prison's sexual offender program (SOP). The plaintiff continues to maintain his innocence; he refuses to admit to the conduct underlying his conviction, which is a prerequisite to admission into the SOP. *See Knowles v. Warden, N.H. State Prison*, 140 N.H. 387, 388, 666 A.2d 972, 974 (1995).

On appeal, the plaintiff argues that the parole board's condition of eligibility for parole upon successful completion of the SOP violates his right against compelled self-incrimination, N.H. CONST. pt. I, art. 15; U.S. CONST. amend. V, and that he was rendered ineffective assistance of counsel when his trial counsel "failed to inform [him] of the penalty consequences of his *Alford* plea and of the nature of certain conditions of probation." For the reasons stated in *Knowles*, 140 N.H. at 391–93, 666 A.2d at 976–77, and *Cable v. Warden, N.H. State Prison*, 140 N.H. 395, 397–98, 666 A.2d 967, 968–69 (1995), his self-incrimination claim fails.

The plaintiff raises his ineffective assistance claim under both the New Hampshire and the Federal Constitutions. We address the issue under the State Constitution independently, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), relying on federal authority only as it is helpful in considering the State issue. *State v. Glidden*, 127 N.H. 359, 361, 499 A.2d 1349, 1350 (1985). Because the State Constitution is at least as protective as the Federal Constitution in this area, we do not conduct a separate federal analysis. *State v. Sanchez*, 140 N.H. 162, 163 663 A.2d 629, 630 (1995); *see Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993).

To succeed on his ineffective assistance of counsel claim, the plaintiff must prove that he was denied "reasonably competent assistance of counsel," *State v. Matiyosus*, 134 N.H. 686, 687, 597 A.2d 1068, 1069 (1991), demonstrating

> that his counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result. This test contains two prongs: the [plaintiff] must show that his

attorney's performance was deficient, or not reasonably competent, and that the deficient performance resulted in actual prejudice to the outcome of the [plaintiff's case].

*Sanchez*, 140 N.H. at 163, 663 A.2d at 630 (quotations and citations omitted). In the guilty plea context, the prejudice prong requires that he show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *State v. Laforest*, 140 N.H. 286, 293, 665 A.2d 1083, 1088 (1995).

■ The plaintiff contends that his *Alford* plea was not knowing and voluntary, *see Boykin v. Alabama*, 395 U.S. 238 (1969); *Richard v. MacAskill*, 129 N.H. 405, 529 A.2d 898 (1987), because he was not made aware of the "penalty consequences of his plea, some of which were unique to the *Alford* character of that plea." To the extent that his claim relates to the conditions of his original probation, it must fail, for the trial court's conclusion that the plaintiff was "aware of the direct consequences of his guilty plea at the time of the plea hearing" is amply supported by the record. *See Diamontopoulas v. State*, 140 N.H. 182, 186, 664 A.2d 81, 83 (1995).

■ We have recently held that *Boykin* and *Richard* do not require that a criminal defendant be informed of "the possibility of imprisonment beyond the recommended sentence in the event of a probation violation, a possible collateral consequence of his plea" of guilty. *Diamontopoulas*, 140 N.H. at 186, 664 A.2d at 83. There is no basis, accordingly, for the plaintiff's claim that his counsel was ineffective by virtue of her failure to inform the plaintiff of the possibility of a greater sentence upon a violation of probation. *Id.*

■ Finally, we fail to see how the petitioner's scenario — a guilty plea pursuant to an agreement which recommends probation, a subsequent violation of probation, and an unsuccessful application for parole — presents circumstances contemplated by *Boykin* and *Richard*. In *State v. Elliott*, 133 N.H. 190, 193, 574 A.2d 1378, 1380 (1990), we declined to consider as a "direct" consequence of a guilty plea the possibility that the guilty plea would render the defendant open to prosecution for violation of an habitual offender statute. Although we did not decide where the line between direct and collateral consequences of guilty pleas is to be drawn, we did

adhere . . . to those cases . . . concluding that a defendant's knowledge of collateral consequences is not within the scope of the "intelligent and voluntary" state of mind that must affirmatively be demonstrated to the court before

acceptance of a guilty plea. We consequently [held] that defense counsel's failure to advise of collateral consequences, as under the habitual offender law, [was] no ground for withdrawing a plea as unintelligent and involuntary.

*Id.*

The factual predicates of *Elliott* and *Diamontopoulas* did not rise to the level of "direct consequences." *Id.*; *Diamontopoulas*, 140 N.H. at 186, 664 A.2d at 83. Nothing about the plaintiff's current situation compels a more favorable result.

■ The plaintiff finally argues that his counsel was ineffective for failing to inform him of a particular consequence of his *Alford* plea: if the plaintiff were to serve any portion of his sentence, his assertion of innocence would preclude him from admission to the SOP, his failure to complete the SOP would effectively preclude parole, and thus "his five-year minimum would become a fifteen-year maximum." The plaintiff originally was not sentenced to *any* committed term of imprisonment. He was later imprisoned because of his own actions. As we explained in *Diamontopoulas*,

> this is a classic example of a conviction's consequence that is collateral, in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it.

> Imprisonment after a probation violation requires not only the application of an independent provision of law, but also some misconduct on the part of the defendant.

*Diamontopoulas*, 140 N.H. at 186, 664 A.2d at 83 (quotation and citation omitted). The actions of the parole board, *after the revocation of probation*, cannot be characterized as the direct consequences of a guilty plea. *See Elliott*, 133 N.H. at 193, 574 A.2d at 1380-81. Accordingly, no specific counsel with regard to this possible outcome was required to meet our standards for the effective assistance of counsel, *see Richard*, 129 N.H. at 408, 529 A.2d at 900, and the trial court was correct in denying the plaintiff's petition.

*Affirmed.*

All concurred.